No. 66,230

In the Matter of GARY J. KERSHNER, *Respondent.*

(827 P.2d 1189)

Opinion filed February 28, 1992.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the brief for petitioner.

*Gary J. Kershner,* pro se, argued the cause, and *Fred W. Rausch, Jr.,* also argued the cause and was on the brief for respondent.

*Per Curiam:* This is an original proceeding in discipline. The hearing panel unanimously found Gary Kershner violated Canon 1 of the Code of Professional Responsibility (1991 Kan. Ct. R. Annot. 174) and Model Rules of Professional Conduct 8.4(b), (c), and (g) (1991 Kan. Ct. R. Annot. 308). The panel recommended that Kershner be disbarred because of (1) his two felony convictions for selling unregistered securities, in violation of K.S.A. 17-1255, and his two felony convictions for acting as a broker-dealer or agent when not registered with the Kansas Securities Commissioner, in violation of K.S.A. 17-1254; (2) his failure to pay his attorney registration fees for the years 1985-1990 inclusive; (3) failure to cooperate with the Disciplinary Administrator; and (4) his failure to appear at the January 30, 1991, panel hearing to present any mitigating evidence.

Gary J. Kershner graduated from law school in June 1965. Since 1985 he has not engaged in the practice of law. For the past several years, Kershner has been a business consultant and a director of Country Kettle, Inc., and Aunt Myra's, Inc., food specialty companies. In his capacity as a business representative of those companies, he handled the sale of stock of those corporations.

The Kansas Securities Commissioner filed a criminal complaint against Kershner consisting of 14 counts alleging violations of the Kansas Securities Act, one count of making a false writing, and one count of perjury. In July 1989, a jury found him guilty of two counts of violating K.S.A. 17-1254 by offering for sale shares

of stock of a corporation when he was not registered as a broker-dealer or agent and two counts of violating K.S.A. 17-1255 by offering for sale or selling shares of stock in a corporation when such security was not registered. On September 22, 1989, the district judge suspended imposition of sentence and placed Kershner on supervised probation for a period of five years and ordered him to pay $10,000 in fines. Kershner appealed the convictions to the Court of Appeals. On November 21, 1990, that court affirmed the convictions. *State v. Kershner*, 15 Kan. App. 2d 17, 801 P.2d 68 (1990).

The Disciplinary Administrator issued a formal complaint on December 21, 1990. A copy of the complaint was sent by certified mail to the address of Kershner's most recent attorney registration in Topeka, Kansas. Another copy was sent to Kershner at a Lenexa, Kansas, address. The Lenexa address was obtained by the Disciplinary Administrator's office from Kershner's counsel in the criminal action. The material sent to the Topeka address was returned to the Disciplinary Administrator's office as not being deliverable as addressed. The material sent to the Lenexa address reveals that two notices to pick up the materials were issued prior to their being returned unclaimed.

The formal complaint alleged Kershner's four convictions for violations of the securities act violated Canon 1 of the Code of Professional Responsibility and Model Rules of Professional Conduct 8.4(b), (c), and (g).

The panel hearing was held January 30, 1991. Kershner did not appear in person or by counsel. The Disciplinary Administrator introduced into evidence the formal complaint, copies of the 16-count criminal complaint, "Affidavit And Application For Arrest Warrant," the journal entry of conviction from the criminal action, and the opinion of the Court of Appeals affirming the four convictions.

The hearing panel unanimously found Kershner violated Canon 1 of the Code of Professional Responsibility and MRPC 8.4(b), (c), and (g).

The panel recommended that Kershner be disbarred.

On February 19, 1991, the Clerk of the Appellate Courts sent to Kershner by certified mail at the Lenexa, Kansas, address a citation directing the respondent to file with the Clerk either (1)

a statement that respondent did not desire to file exceptions to the report, findings, and recommendation, or (2) respondent's exceptions to the report. The citation was received and signed for by Kershner on February 22, 1991.

Kershner's exceptions to the hearing panel's report were filed on April 17, 1991. He denied receiving notice of the January 30, 1991, panel hearing and asked, as an alternative procedure, for a second panel hearing so he could respond to the charges in the formal complaint. That request was denied on April 25, 1991, and Kershner was directed to proceed under Supreme Court Rule 212 (1991 Kan. Ct. R. Annot. 157), which states the procedure normally followed after exceptions to the final hearing report are filed.

Kershner presents four issues for consideration.

I. WHETHER KERSHNER'S REASONS FOR NOT PAYING HIS ATTORNEY REGISTRATION FEES FOR THE YEARS 1985-1990 WERE VALID.

Kershner asserts there is a valid explanation for his failure to pay the attorney registration fees for 1985-1990. Kershner explains he was informed by a clerical employee of the Supreme Court in 1985 that, because he was not practicing law and had not been practicing law for the last year or two, and did not intend to practice law in the future, he was not required to pay the annual registration fee for practicing attorneys. Based on this information, he did not pay the attorney registration fees for 1985-1990. Kershner admits he subsequently learned he was required to request his name be placed on the list of inactive attorneys.

Supreme Court Rule 208 (1991 Kan. Ct. R. Annot. 151) as of July 1, 1987, requires all attorneys admitted to practice law before this court to pay an annual registration fee in such amount as ordered by the court. No registration fee is charged to (1) any attorney newly admitted to the practice of law in Kansas until the first regular registration date following admission, (2) any attorney who has retired from the practice of law and is over age 65, or (3) any attorney who is on inactive status due to physical or mental disability. Kershner does not fall within these exceptions and is required to pay the annual attorney registration fee. Any attorney who fails to pay the registration fee by August 1

of each year may be suspended from the practice of law in this state.

Although one of the bases for the panel's recommendation that Kershner be disbarred is his failure to pay his attorney registration fees for the years 1985-1990, the Disciplinary Administrator indicated in his brief that he did not perceive the failure to pay the attorney registration fees for the years 1985 through 1990 to be a significant issue because Kershner was not practicing law during those years. We agree with the Disciplinary Administrator's conclusion and note Supreme Court Rule 208(f) provides a procedure for an attorney who is delinquent in the payment of attorney registration fees to be reinstated.

II. WHETHER KERSHNER WAS DENIED DUE PROCESS OF LAW BY NOT BEING AFFORDED A SECOND HEARING.

Kershner states he never received notice of the panel hearing which was held on January 30, 1991. He notes that the recommendation that he be disbarred was based, in part, upon his failure to appear and present evidence in mitigation of the charges against him. Kershner contends he was denied his right to a due process hearing because he was not notified of the time, date, and place of the panel hearing. He argues he was entitled to a due process hearing prior to this court's hearing on the recommendation of the hearing panel. Kershner requests we remand this matter to the panel to afford him a full due process hearing on the complaint.

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, Syl. ¶ 3, 802 P.2d 1231 (1990).

The Disciplinary Administrator argues that a copy of the formal complaint and notice of hearing was sent to Kershner by certified mail as required by Supreme Court Rule 215(a) (1991 Kan. Ct. R. Annot. 160) and that under Rule 215(c) service by such mailing is complete upon mailing whether or not the same is actually received. In addition, the Disciplinary Administrator asserts he

went a step beyond what is required by Rule 215 by obtaining the Lenexa mailing address and sending by certified mail a copy of the formal complaint and notice of hearing to that Lenexa address. The Disciplinary Administrator states that the respondent, despite two notices, ignored the materials sent to him at the Lenexa address.

Finally, the Disciplinary Administrator asserts that, even if Kershner did not know about his disciplinary hearing, he alone prevented the documents from being sent to his correct address when he failed to apprise the Clerk's office of his mailing address as required by Supreme Court Rule 208(c). In addition, although Kershner failed to respond to either notice at the Lenexa address, he immediately responded to the citation mailed to that address by the Clerk of the Supreme Court.

Under the circumstances, Kershner was afforded notice reasonably calculated to apprise him of the pendency of the hearing before the panel. It was Kershner's failure to apprise the Clerk's Office of his mailing address as required by Supreme Court Rule 208(c) that caused his failure to receive the notice. In addition, Supreme Court Rule 212 allowed Kershner to file exceptions to the committee's report prior to any hearing before this court. Under these facts, Kershner was afforded his right to due process.

III. WHETHER THE EVIDENCE JUSTIFIES THE HEARING PANEL'S FINDING THAT KERSHNER VIOLATED CANON 1 AND MODEL RULES OF PROFESSIONAL CONDUCT 8.4(b), (c), and (g).

Canon 1 states that a lawyer should assist in maintaining the integrity and competence of the legal profession.

Kershner points out that, in finding that he violated Canon 1, the hearing panel did not specifically indicate which part or parts of Canon 1 he violated. He notes that even the Disciplinary Administrator's formal complaint cites no disciplinary rule under Canon 1 that allegedly was violated or explains how Canon 1 itself was violated.

We have reviewed the record and find it does not sufficiently support a finding of a violation of Canon 1 of the Code of Professional Responsibility.

Kershner next contends that the "purely technical" violations of the Kansas Securities Act are not the types of criminal acts

contemplated in Model Rule of Professional Conduct 8.4(b), (c), or (g).

Model Rule of Professional Conduct 8.4 provides in part:

"It is professional misconduct for a lawyer to:

. . . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

. . . .

(g) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law." 1991 Kan. Ct. R. Annot. 308.

Kershner argues that, even though a jury found his conduct technically violated the Kansas Securities Act, this does not adversely reflect on his fitness to practice law, because he has not been practicing law and does not intend to practice law in the future.

The Disciplinary Administrator argues the purpose of the Kansas Securities Act is to protect investors by preventing the sale of fraudulent and worthless speculative securities. The Disciplinary Administrator states that, although Kershner contends that his "purely technical" violations of the Kansas Securities Act are not the type of criminal conduct contemplated in MRPC 8.4, the legislature obviously did not consider violations of K.S.A. 17-1254 and 17-1255 to be merely technical violations of the criminal laws of the State of Kansas because the violations are classified as felony offenses.

We hold that the mere fact that Kershner was convicted of four felony violations of the Kansas Securities Act is sufficient to show a violation of MRPC 8.4(b) in that he committed a criminal act that reflects adversely on the lawyer's "fitness as a lawyer in other respects." Since there is a violation of MRPC 8.4(b), under the facts present, Kershner's felony convictions cannot also be "other conduct that adversely reflects on his fitness to practice law" and a violation of MRPC 8.4(g). There does not appear to be a violation of MRPC 8.4(c).

IV. WHETHER THE PANEL'S RECOMMENDATION OF DISBARMENT WAS EXCESSIVE.

Kershner argues that the burden is on the Disciplinary Administrator to prove by clear and convincing evidence that (1) he had the specific intent to violate the Kansas Securities Act and (2) he fraudulently induced individuals to purchase or otherwise accept stock he promoted. Kershner argues there is no evidence he received any personal gain resulting from the acts for which he was convicted and there is no evidence he intended to cause harm, injury, or financial loss to any individuals named in the four counts for which he was convicted.

As authority, Kershner cites the case of *In re Holman, Accused,* 297 Or. 36, 67, 682 P. 2d 243 (1984), where the Oregon Supreme Court stated in that disciplinary action:

"This proceeding in neither civil nor criminal in nature, but is sui generis . . . . The Bar has charged that, in taking and withholding the money from the beneficial owners, the accused acted with a specific intent. We hold that the burden of persuasion on that element is on the Bar and does not shift . . . ."

Kershner then summarizes the criminal proceedings and concludes that because the crimes he was convicted of did not require a specific intent to violate the provisions of the Kansas Securities Act convictions for that type of violation do not warrant disbarment. Kershner argues that he believed he was operating within the provisions of the act; he had sought and followed the advice of his attorneys; he had no specific intent to commit the crimes; and neither of his companies, the stockholders, nor any person involved in the four charges he was convicted of has ever complained, sought return of the purchase price of any stock sold or delivered, or filed a complaint, civil or criminal, with the Securities Commissioner alleging injury, misrepresentation, deceit, or fraud. The testimony of the attorney who advised Kershner was excluded by the district judge during the criminal trial, although proffered. The trial judge found there were no victims and refused to order restitution to any party.

Kershner requests we consider all the mitigating factors of the criminal proceedings and his desire to remain in good standing as an attorney. Kershner states that because he had no specific intent to violate the securities act or to harm any person he should not be disbarred.

As authority to disbar Kershner for the crimes for which he was convicted, the Disciplinary Administrator cites Supreme Court Rule 202 (1991 Kan. Ct. R. Annot. 142), which provides:

"A certificate of a conviction of an attorney for any crime or of a civil judgment based on clear and convincing evidence shall be conclusive evidence of the commission of that crime or civil wrong in any disciplinary proceeding instituted against said attorney based upon the conviction or judgment."

The Disciplinary Administrator notes Rule 202 makes no distinction between a crime requiring specific intent or any other crime. The Disciplinary Administrator observes Rule 202 does not require the Disciplinary Administrator to prove the respondent's specific intent to commit the act when specific intent is not a necessary element of the crimes of which the respondent was convicted.

The Disciplinary Administrator notes the Court of Appeals, when affirming Kershner's convictions, relied on *State v. Hodge*, 204 Kan. 98, 460 P.2d 596 (1969). In *Hodge*, the appellant argued his convictions for violations of the securities act should be reversed because under the criminal statute there was no requirement for the prosecution to prove he specifically intended to violate the Act. This court rejected Hodge's argument and affirmed his convictions. In *Hodge*, 204 Kan. 98, Syl. ¶ 10, we stated that "[u]nder K.S.A. 17-1267 any person who willfully violates the provisions of the Kansas securities act is guilty of a felony, no specific intent being required to commit the offense. The term 'willfully' is construed to mean the person acted intentionally in the sense that he was aware of what he was doing."

The Disciplinary Administrator also notes that in *State v. Russo*, 230 Kan. 5, 630 P.2d 711 (1981), the respondent maintained he was innocent of the underlying criminal charge which led to the disciplinary action and urged the court to look behind the conviction. The *Russo* court rejected respondent's request, stating: "However, once that conviction became final, it is conclusive upon this court and this court will not look behind the conviction or attempt to weigh the evidence leading to that conviction." 230 Kan. at 8.

Contrary to Russo's claim he was innocent, Kershner is not arguing that he should not have been convicted of the crimes

because he had no specific intent to commit the offenses. Rather, he is stating that his lack of specific intent and the surrounding circumstances such as good faith reliance on his attorney and the fact there were no victims, etc., mitigate the gravity of the convictions for purposes of imposing discipline.

The Disciplinary Administrator does not address Kershner's argument that the lack of specific intent reduces the gravity of the convictions for purposes of deciding the type of attorney discipline that should be imposed.

Kershner contends that disbarment is excessive punishment under the circumstances of his convictions. He points out his scholastic and athletic accomplishments as a college student, his civic activities, his interest in and assistance to Kansas youth, and his lack of intent to defraud or injure anyone or to knowingly violate Kansas securities law.

In assessing discipline, certain factors are to be considered: (1) whether restitution has been made; (2) previous violations or absence thereof; (3) previous good character and reputation in the community; (4) present or past attitude of the attorney as shown by his cooperation during the hearing and acknowledgment of the transgression; (5) support from clients, members of the bar, and friends; (6) any statement by a complainant expressing satisfaction with any restitution made and requesting no discipline; and (7) personal misfortunes of the attorney which may have contributed to any violation. *State v. Hohman,* 235 Kan. 883, 890, 686 P.2d 122 (1984).

Kershner claims that, upon consideration of the above factors, he should not be disbarred but should be placed on probation and permitted to submit a request to the Court that his name be placed upon the role of inactive attorneys for the reason that he has not practiced law since 1985 and has no intention of practicing law in the future.

The Disciplinary Administrator asserts that Kershner continually downplays the seriousness of his conduct; that he justifies his actions by claiming to have acted in good faith and in reliance on another attorney's advice; that he claims he was the victim of a personal vendetta on the part of the Kansas Securities Commissioner; and that Kershner has not recognized or accepted the seriousness of his conduct.

We note the Comment in MRPC 8.4 states in part:

"Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving 'moral turpitude.' That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." 1991 Kan. Ct. R. Annot. 308.

The respondent did violate MRPC 8.4(b) in committing a criminal act that reflects adversely on his fitness as a lawyer. We acknowledge under the facts Kershner's convictions for violating the securities act were not acts of violence, dishonesty, or a breach of trust or a serious interference with the administration of justice. In addition, the district judge determined there were no victims to compensate because of Kershner's illegal act. The majority of this court finds disbarment is excessive under these circumstances and imposes the less severe punishment of public censure.

IT IS THEREFORE ORDERED that Gary Kershner be, and he is hereby, publicly censured for his violation of MRPC 8.4(b).

IT IS FURTHER ORDERED that this order shall be published in the Kansas Reports and that the costs herein be assessed to the respondent.