No. 99,410

In the Matter of EDWARD F. WALSH, IV, *Respondent.*

(182 P.3d 1218)

Opinion filed May 16, 2008.

*Frank D. Diehl,* Deputy Disciplinary Administrator, argued the cause and was on the brief for petitioner.

*Edward F. Walsh, IV,* Respondent, was on the brief and argued the cause pro se.

*Per Curiam:* This is a contested proceeding in discipline filed against the Respondent Edward F. Walsh, IV, an attorney licensed to practice law in Kansas since 1997. On October 13, 2005, the Kansas Supreme Court suspended the Respondent's license to practice law for failing to comply with the annual administrative requirements to maintain a law license. At the time of oral argument in this case, the Respondent's Kansas license remained suspended, although he was still able to practice law in Missouri.

The Formal Complaint in this case alleged that the Respondent violated Kansas Rules of Professional Conduct (KRPC) 4.1 (2007 Kan. Ct. R. Annot. 527) (truthfulness in statements to others); 8.4(c) (2007 Kan. Ct. R. Annot. 559) (misconduct involving dishonesty, fraud, deceit or misrepresentation); and Supreme Court Rule 207 (2007 Kan. Ct. R. Annot. 288), for failing to assist the Disciplinary Administrator in the investigation of his actions. The alleged violations arose out of the Respondent's actions and inaction involving two separate estate sales and the disciplinary investigation that followed.

*Weiss Complaint*

In 2005, Wyndolyn Weiss contacted a company by the name of Lynn Steely, Inc., d/b/a Lynn Steely Estate Sales, for purposes of inspecting her property for sale. Lynn Steely is the Respondent's wife. Thereafter, the Respondent, as a representative of Lynn Steely Estate Sales, met Weiss in her home and inspected her property for sale. Weiss, who is legally blind, entered into a written

contract with the Respondent. The contract required Lynn Steely Estate Sales to pay Weiss the amount owing to her within 30 days of the last day of the sale.

On November 11, 2005, Lynn Steely Estate Sales conducted a sale on Ms. Weiss' property in Missouri. After Ms. Weiss did not timely receive the amount owing to her, she contacted an attorney, David L. McKinney. McKinney called the Lynn Steely Estate Sales' office and left numerous messages in Weiss' behalf. Neither the Respondent nor his wife returned McKinney's telephone calls. On December 22, 2005, McKinney discovered that the Respondent was listed as the registered agent for the Lynn Steely Estate Sales. McKinney left a message for the Respondent. Approximately 1 week later, the Respondent returned McKinney's telephone call. On December 30, 2005, the Respondent agreed to provide McKinney with a full accounting of the sale, a copy of the signed contract, the key to the house, and the buyout receipts early during the first week of January 2006. However, the Respondent failed to provide these items to McKinney as promised. Thereafter, on January 9, 2006, McKinney again called the Respondent. The Respondent failed to return the telephone calls.

On January 18, 2006, McKinney wrote to the Respondent and demanded payment on behalf of Weiss in the amount of $3,250. After the letter had been sent by McKinney but before it had been received by the Respondent, the Respondent called and left a message for McKinney. The Respondent stated that he had mailed the requested information that day.

On January 20, 2006, McKinney received a letter from the Respondent, dated January 17, 2006, but postmarked January 19, 2006. The Respondent did not send a full accounting of the sale, the key to the house, or the buyout receipts. The Respondent's letter contained an offer to settle the matter for $1,375. The Respondent also enclosed a signed copy of the second contract entered into by the parties. That same day, McKinney again wrote to the Respondent and requested that he provide the full accounting that he previously promised to provide. McKinney informed the Respondent that Weiss wished to review the accounting before she decided whether to accept the Respondent's offer. Again, the Re-

spondent failed to provide the requested accounting. Despite the fact that she had not had the opportunity to review an accounting of the sale, Weiss agreed to accept the Respondent's offer to conclude the matter. As a result, on February 22, 2006, McKinney again wrote to the Respondent. McKinney accepted the Respondent's offer to settle the matter for $1,375. McKinney instructed the Respondent to pay the entire amount owing by March 14, 2006, or Weiss would revoke her acceptance. The Respondent failed to pay the agreed amount by March 14, 2006.

*Johnson Complaint*

On November 20, 2005, Richard W. and Ruth Ellen Johnson and the Respondent entered into a contract. The contract provided that the Lynn Steely Estate Sales would organize and hold an estate sale of Ellen Johnson's mother's belongings in Kansas City, Missouri. The Respondent signed the contract as a representative of the company. According to the contract, in exchange for conducting the sale, the Johnsons agreed to pay Lynn Steely Estate Sales 31% of the gross receipts. The Respondent agreed to provide the Johnsons with at least 40% of their share of the proceeds within 14 days of the sale and the remaining funds within 30 days of the sale.

Lynn Steely Estate Sales conducted sales of the Johnsons' property on December 2, 2005, and January 6, 2006, through January 8, 2006. Because they did not receive the proceeds from the estate sale according to the terms of the contract, Richard Johnson called the Respondent on January 30, 2006. The Respondent informed Richard Johnson that he would deliver the proceeds of the sales no later than February 3, 2006. On February 9, 2006, the Johnsons sent the Respondent a letter and an electronic mail message, demanding payment. On February 10, 2006, the Respondent sent three checks to the Johnsons by courier. Each of the three checks was signed by Lynn Steely. Check number 3077 was dated February 3, 2006, and payable in the amount of $1,109.75. Check 3079 was post-dated February 17, 2006, and payable in the amount of $2,500. Check 3078 was post-dated February 24, 2006, and payable in the amount of $2,500.

On February 24, 2006, the Johnsons attempted to deposit the three checks into their bank account. However, their bank returned each of the checks because there were not sufficient funds in the Lynn Steely, Inc., bank account to cover the checks. On March 2, 2006, the Johnsons went to the bank which held the Lynn Steely, Inc., bank account and were informed that there were insufficient funds in the account to pay any of the checks.

On March 10, 2006, the Respondent offered to pay the Johnsons $7,000 to settle the dispute. They rejected his offer. On March 14, 2006, the Johnsons offered to settle the matter for $9,275. They gave the Respondent until March 16, 2007, to accept the offer. The Respondent did not accept the Johnsons' offer. Thereafter, the Johnsons filed a civil suit against Lynn Steely, Inc., the Respondent, and Ms. Steely.

*Disciplinary Investigation and Proceedings*

On May 23, 2006, Weiss filed a complaint with the Disciplinary Administrator's office. The Disciplinary Administrator forwarded to the Respondent at his last registered address a copy of the complaint along with a letter directing the Respondent to provide a written response to the complaint. The Respondent did not receive the letter and the copy of the complaint at that time because the Respondent had moved from his last registered address. The Respondent failed to notify attorney registration of his current address.

On June 19, 2006, Richard and Ruth Ellen Johnson filed a complaint with the Disciplinary Administrator's office. On June 21, 2006, the Disciplinary Administrator wrote the Respondent and directed him to file a written response to the complaint. The letter was forwarded to the Respondent's last registration address. However, the Respondent no longer remained at his last registration address and, as a result, did not receive the letter.

Thereafter, on August 3, 2006, Clifford Cohen, the attorney appointed to investigate the two complaints, wrote to the Respondent at his new address. In his letter, Cohen directed the Respondent to contact him and schedule an interview. Additionally, Cohen directed the Respondent to provide a written response to the com-

plaint. The Respondent failed to contact Cohen's office and the Respondent failed to provide written responses to the complaints.

On August 31, 2006, Cohen sent an electronic mail message to the Respondent. On September 4, 2006, the Respondent responded to Cohen's electronic mail message. After receiving the Respondent's September 4, 2006, electronic mail message, Cohen directed the Respondent to contact him within 30 days and let him know if he resolved the claims by the Johnsons and Weiss. Thereafter, on September 5, 2006, the Respondent forwarded his current address to Cohen, and Cohen provided the Respondent with a copy of the complaints.

On September 28, 2006, Cohen sent the Respondent an additional electronic mail message, notifying the Respondent that he scheduled an interview with the Respondent for October 6, 2006, at Cohen's office. Cohen directed the Respondent to bring his files, documents, and photographs of the Johnsons' property and Weiss' property. The Respondent did not appear at Cohen's office for an interview as directed. Additionally, the Respondent never provided Cohen with his files, documents, and photographs relating to the Johnson property and Weiss' property.

On December 11, 2006, the Respondent finally provided the Disciplinary Administrator a written response to the Johnsons' complaint. The Respondent never provided a response to Weiss' complaint.

On June 26, 2007, approximately 6 weeks prior to the hearing on this matter, the Respondent and Weiss settled her claim against him and entered into a general release. As a result, the Respondent paid Weiss $1,570.89.

On August 4, 2007, the Respondent and the Johnsons entered into a general release. As a result, the Respondent paid the Johnsons $6,500. Additionally, the Respondent promised to pay them an additional $1,000 or before August 31, 2007. In addition to the written general release, the Respondent included an oral provision that the settlement was conditioned upon the Johnsons refraining from voluntarily testifying at the disciplinary hearing scheduled for August 16, 2007. Also on August 4, 2007, the Johnsons forwarded a notarized letter to the Disciplinary Administrator. In the letter,

they stated that they were satisfied with the settlement and that they no longer were seeking any sanction or disciplinary action against the Respondent.

Prior to the disciplinary hearing, the Respondent talked by phone with Sally Harris, the presiding officer of the hearing panel, to request a prehearing conference and to discuss procedure. During that call the Respondent asked whether the hearsay rule applied in disciplinary matters, stated that he had heard "rumors" that some of the named witnesses would not be appearing, and requested confirmation that the burden of proof is clear and convincing evidence. Thereafter, Harris contacted the Deputy Disciplinary Administrator, Frank D. Diehl, to schedule a pretrial conference and, in fairness to counsel, relayed her conversation with the Respondent. Thereafter, a prehearing conference was held by telephone on August 14, 2007. On August 15, 2007, the day before the hearing, Diehl had Richard Johnson served with a subpoena to appear at the disciplinary hearing.

At the hearing before the panel of the Kansas Board for Discipline of Attorneys, the Respondent disputed some of the allegations of the Disciplinary Administrator. The Disciplinary Administrator then asked the hearing panel to also consider whether the Respondent violated KRPC 3.4(f) (2007 Kan. Ct. R. Annot. 514) (fairness to opposing party and counsel). The Disciplinary Administrator recommended indefinite suspension or disbarment. The majority of the panel recommended a 1-year suspension. The remaining member of the panel recommended indefinite suspension or disbarment.

In the final hearing report, the panel concluded that the Respondent violated KRPC 3.4(f), KRPC 4.1(a), and Kan. Sup. Ct. R. 207(b). KRPC 3.4(f) prohibits a lawyer from requesting another to refrain from voluntarily providing testimony, stating:

"A lawyer shall not:

. . . .

"(f)  request a person other than a client to refrain from voluntarily giving relevant information to another party unless:

(1)  the person is a relative or an employee or other agent of a client; and

(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information."

The panel stated: "The Respondent violated KRPC 3.4(f) when, in negotiating the settlement of Mr. and Mrs. Johnson's claim against him, he included a condition that Mr. and Mrs. Johnson refrain from voluntarily providing testimony in the disciplinary hearing."

KRPC 4.1(a) provides that "[i]n the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person." The panel concluded the Respondent violated KRPC 4.1(a) when he knowingly and intentionally informed McKinney that he had forwarded the requested materials (the accounting, the key to Weiss' home, and the buyout receipts) on January 18, 2006.

Kansas Supreme Court Rule 207(b) provides:

"It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters."

The panel concluded the Respondent knew that he was required to forward a written response to Weiss' initial complaint. Because the Respondent knowingly failed to provide a written response to the initial complaint filed by Weiss, the hearing panel concluded that the Respondent violated Supreme Court Rule 207(b).

In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter "Standards"). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors. With respect to this standard, the hearing panel noted the following considerations:

"*Duty Violated.* The Respondent violated his duty to the public to maintain his personal integrity.

"*Mental State.* The Respondent knowingly violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual harm to the public and to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Dishonest or Selfish Motive. The Respondent's misconduct was motivated by dishonesty and selfishness. The Respondent was dishonest to Mr. [McKinney]. Additionally, the Respondent engaged in dishonest conduct during the disciplinary process when he required Mr. and Mrs. Johnson to refrain from voluntarily giving testimony as a condition of the settlement.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. First, the Respondent failed to provide a written response to Ms. Weiss' complaint. Second, the Respondent failed to provide a timely written response to Mr. and Mrs. Johnson's complaint. Finally, the Respondent intentionally attempted to obstruct the disciplinary hearing by requiring that Mr. and Mrs. Johnson refrain from voluntarily testifying at the disciplinary hearing. The Hearing Panel, therefore, concludes that the Respondent knowingly and intentionally obstructed the disciplinary proceeding.

"Refusal to Acknowledge Wrongful Nature of Conduct. As an attorney, the Respondent has certain obligations and duties that are constant regardless of whether the Respondent is acting as an attorney or not. It is clear from the Respondent's testimony that he believes that he is not bound by his obligations and duties when acting in a capacity other than as an attorney. The Respondent is mistaken. Further, the Respondent never acknowledged his transgressions. Accordingly, the Hearing Panel concludes that the Respondent's refusal to acknowledge his misconduct is an aggravating factor in this case.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. The Respondent's father has been ill, the Respondent has suffered financial problems, and the Respondent is now separated from his wife. It appears from the record that the Respondent's personal problems may have contributed to his misconduct.

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent is an active and productive member of the bar in Kansas City, Missouri. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as evidenced by letters received by the Hearing Panel.

"Any Statement by the Complainant Expressing Satisfaction with Restitution and Requesting No Discipline. Generally, a statement by the complainant expressing satisfaction with restitution and requesting no discipline would be a mitigating factor. However, such a statement is presumed to be a voluntary statement. Thus, Respondent's Exhibit B would be evidence in mitigation had the statement been voluntary. It appears that Mr. and Mrs. Johnson's letter was compelled through the settlement of the case. As such, the Hearing Panel concludes that it is not a mitigating factor in this case. Rather, testimony related to this issue constituted an additional violation of the Kansas Rules of Professional Conduct."

Additionally, the Hearing Panel thoroughly examined and considered the following Standards:

"Disbarment is generally appropriate when a lawyer:
(a) intentionally tampers with a witness and causes serious or potentially serious injury to a party, or causes significant or potentially significant interference with the outcome of the legal proceeding; or
(b) makes an ex parte communication with a judge or juror with intent to affect the outcome of the proceeding, and causes serious or potentially serious injury to a party, or causes significant or potentially significant interference with the outcome of the legal proceeding; or
(c) improperly communicates with someone in the legal system other than a witness, judge, or juror with the intent to influence or affect the outcome of the proceeding, and causes significant or potentially significant interference with the outcome of the legal proceeding." Standard 6.31.

"Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding." Standard 6.32.

"Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." Standard 7.2.

At the hearing on this matter, the Disciplinary Administrator made two recommendations. First, if the hearing panel concluded that the Respondent violated KRPC 3.4, then the Disciplinary Administrator's recommendation was that the Respondent should be disbarred. Second, if the hearing panel did not conclude that the Respondent violated KRPC 3.4, then the Disciplinary Administrator's recommendation was that the Respondent be indefinitely suspended from the practice of law. Prior to the hearing, the Respondent provided the hearing panel with a proposed plan of probation.

However, at the hearing on this matter, the Respondent recommended that he be censured.

The majority of the panel then made its recommendation for discipline, as follows:

"The Hearing Panel is troubled by the Respondent's behavior leading up to the disciplinary hearing in this case. The Respondent intentionally sought to prevent witnesses, listed on the Disciplinary Administrator's Witness and Exhibit List, from voluntarily attending and testifying at the disciplinary hearing. The Respondent's behavior in this regard is reprehensible. It is incumbent upon the Respondent, prior to practicing law in Kansas again, to recognize and appreciate the seriousness of his obstructionist activities.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, a majority of the Hearing Panel recommends that the Respondent be suspended for a period of one year from the practice of law in the state of Kansas."

## In his concurring opinion, panel member John D. Gatz stated:

"I agree with the findings and conclusions set forth in the Final Opinion of the Hearing Panel. However, the discipline recommended by the majority of the panel is not commensurate with the seriousness of the conduct of the Respondent. The Respondent disregarded his obligations to Mrs. Weiss and to Mr. and Mrs. Johnson. He disregarded the requests of investigator Cohen. He disregarded the requests of the Office of the Disciplinary Administrator. For the most part, he delayed dealing with the requests of Weiss and Johnson until the eve of the Disciplinary Hearing, and in Johnson's case, completely responded to them only days before the hearing and then conditioned the settlement upon the withdrawal of the Johnson complaint and a solicited promise not to appear at the hearing.

"Mr. Walsh questioned the jurisdiction of the panel based on the fact that all conduct in question occurred in the state of Missouri. He also suggested that at all times relevant to the conduct in issue, he was not acting as an attorney. In his opening remarks he stated:

'The evidence will show that in the fall of 2005 I was working as the Business Manager for a company known as Lynn Steely, Inc., d/b/a Lynn Steely Estate Sales. In that capacity I was not acting as an attorney.'

The Respondent testified that a different standard of conduct applied to his work as an employee of Lynn Steely, Inc. and his work as an attorney.

"The Respondent disregarded investigator Cohen's requests. At the time of this hearing, Mr. Cohen had been investigating ethics complaints for 18 years. When asked what the Respondent should have done but failed to do, Mr. Cohen testified:

'At a minimum, he should have filed a detailed written response to the Johnson and Weiss complaints certainly after he got copies of them from me, assuming he didn't have them earlier. Secondly, he should have come

into my office for an interview. Thirdly, he should have produced the records that I specifically requested in writing from him. Those three things put together signify a substantial lack of cooperation.'

"He promised an accounting to Mrs. Weiss through her attorney, Mr. McKinney. As evidenced by the facts in Paragraphs 8, 9, 10, and 11, the Respondent promised an accounting which was never produced and told Mr. McKinney that he mailed the information on January 18th when, in fact, the letter was not posted until January 19th.

"The Respondent's testimony during the hearing convinced this panel member that he never intended to provide an accounting to Mrs. Weiss, the Johnsons or Mr. Cohen despite his promise or promises to provide accountings. When pressed by the panel members on this issue, the Respondent admitted that records are kept of estate sales including records of transactions; money is counted and the count is recorded; proceeds are deposited into accounts and a written record is maintained. These kinds of records were kept for the Weiss sale and for the Johnson sale. The Respondent admitted that both Weiss and Johnson asked for an accounting. The Respondent testified 'they asked me for an item-by-item accounting, which we do not maintain.' Finally, the Respondent was asked:

'Q.: Do you think you — as the contact with the business and these people, do you think you had some sort of obligation to just give them some written verification of what was sold, when it was sold, and for how much?

'A.: No, because Lynn's perspective was that was proprietary, and unless it had been agreed to, it was not to be released.'

This exchange convinced this panel member that the Respondent never intended to provide the accountings that were promised to Weiss and Johnson. It would have been a simple matter to tell them the contract did not authorize or require the Respondent's employer to provide an accounting. The facts document that the Respondent attempted to frustrate the efforts of Mrs. Weiss and her attorney and the Johnsons and their attorney in collecting the monies to which they were entitled and receiving the information they had requested.

"The facts document that the Respondent intended to ignore, delay and frustrate the disciplinary process. That is particularly evident in the Respondent's admission that he raised as a condition of settlement, that the Johnsons withdraw their complaint, and further conditioned the settlement upon Mr. and Mrs. Johnson refraining from voluntarily appearing at the Disciplinary Hearing.

"At best, the Respondent's conduct demonstrates a callous indifference to his obligations as an attorney. At worst, the Respondent's conduct demonstrates an intended effort to circumvent his responsibilities as an attorney and as a representative of Lynn Steely, Inc. to Mrs. Weiss and Mr. and Mrs. Johnson, and to circumvent and avoid the disciplinary process. The Respondent should be indefinitely suspended or disbarred."

During oral arguments before this court, the Respondent acknowledged the serious ramifications of his actions. When asked

why he did not cooperate with the disciplinary investigation, the Respondent stated that his life was in shambles at the time and he simply did not want to deal with the possible disciplinary violations. He stated that, at the time, he was just hoping that if he did not deal with the accusations of disciplinary violations, they would just go away. Respondent stated he now realizes that was not the best way to handle the situation.

## Analysis

The applicable standard of review in disciplinary cases is well settled:

"We view the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory only, but we give the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. Therefore, we do not reweigh the evidence or pass on credibility of witnesses. [Citation omitted.] We merely examine any disputed findings of fact and determine whether clear and convincing evidence supports the panel's findings. [Citation omitted.] If so, the findings will stand." *In re Comfort*, 284 Kan. 183, 190, 159 P.3d 1011 (2007).

## Reliance on Statements Outside the Record

First, the Respondent takes exception to the inclusion of a footnote in the final hearing report regarding statements he purportedly made to the presiding officer, Sally Harris, on a prehearing conference call. The Respondent reportedly told Harris he had heard "rumors" that some of the named witnesses would not be appearing and requested confirmation that the burden of proof was clear and convincing evidence. The Respondent argues the panel's reliance on these statements violated Supreme Court Rule 211(e) (2007 Kan. Ct. R. Annot. 304), requiring all witnesses to be sworn and all proceedings and testimony to be recorded, because such statements were neither sworn nor recorded. Accordingly, the Respondent contends that because the statements affected his credibility as a whole, the panel's reliance on the statements invalidates

the entire proceeding. Additionally, the Respondent contends the panel's reliance on these statements violated his due process rights because the Respondent was never made aware of the panel's concern with these statements or given an opportunity to explain such statements.

Even if the panel's inclusion of the statements in the footnote to the final hearing report was a deviation from the rules and procedures set out in Supreme Court Rule 211(e), we have stated that any deviation from the rules and procedures does not constitute a defense in a disciplinary proceeding and is not grounds for dismissal absent a clear and convincing showing of actual prejudice to the respondent. Supreme Court Rule 224 (2007 Kan. Ct. R. Annot. 364).

Here, the complained of statements have to do with the settlement of the Johnsons' claim against the Respondent and the allegation that, as part of their settlement agreement, the Respondent made the Johnsons agree not to voluntarily testify against him at the disciplinary hearing. Mr. Johnson's assessment of their settlement agreement containing such a provision was uncontroverted testimony presented at the disciplinary hearing. Moreover, the Respondent himself stated, "I remember raising it as a condition of settlement that I wanted them to withdraw all complaints." Panel member Claus then asked the Respondent, "I guess my question— my direct question was whether or not you raised as a condition of settlement that they not voluntarily testify at this proceeding." The Respondent answered, "It's possible." Consequently, the evidence presented at the disciplinary hearing already established the Respondent's attempts to prevent the Johnsons from testifying against him at the disciplinary hearing. Further, the Respondent was given an opportunity to defend himself against such accusations and explain the context, if any, of such a condition of the settlement agreement, or dispute its existence. The Respondent failed to do so. No matter what the Respondent's intentions were in making the complained of statements to Ms. Harris, or even whether he in fact made such statements, the evidence presented was clear that the Respondent had attempted to get the Johnsons to agree not to testify against him at a disciplinary hearing. As such, the

Respondent has failed to establish any real prejudice by the panel's inclusion of the complained of statements in the footnote to the final hearing report.

## Settlement as a Mitigating Factor

The Respondent argues the panel erred in concluding that the Johnsons' letter was compelled through the settlement of the case and, therefore, was not a mitigating factor. He argues further that even if the letter is deemed "compelled" through the settlement of the case, there is still no clear and convincing evidence to conclude that it was not voluntary since the settlement, itself, was voluntary. The Respondent is correct that "[a]ny attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence." *In re Comfort*, 284 Kan. at 190, citing *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003). However, the Respondent cites no authority for his position that each aggravating and mitigating factor must be supported by clear and convincing evidence. Rather, the panel must consider the evidence presented with respect to aggravating and mitigating circumstances and determine how much weight to assign to each in arriving at an appropriate discipline. Here, it appears the panel did consider the Johnsons' letter, but decided not to give it much weight as a mitigating factor because it was compelled as part of a settlement.

Although the Respondent is correct that it would appear the Johnsons' decision to enter into a settlement agreement was voluntary, the panel found their letter expressing satisfaction with restitution and requesting no discipline was compelled as a condition of the settlement. Mr. Johnson testified that the release was negotiated, that he had to make concessions in order to get paid, and that getting paid was his major consideration. There was ample evidence presented to support the panel's finding that the letter was compelled and this court should not reweigh the evidence. As such, the panel did not err in failing to give weight to the letter as a mitigating factor.

## Subject Matter Jurisdiction

The Respondent contends the hearing panel did not have subject matter jurisdiction in this case both because the complained of conduct pertains to actions occurring outside the practice of law and in Missouri, rather than in Kansas. Petitioner cites Kansas case precedent where attorneys were disciplined for actions that occurred outside of the practice of law. In *In re Kershner*, 250 Kan. 383, 388, 827 P.2d 1189 (1992), a non-practicing attorney was disciplined after being convicted of two felony convictions for selling unregistered securities. However, as Respondent points out, the attorney in *Kershner* was charged with violating MRPC 8.4 (now KRPC 8.4), which provides in relevant part:

"It is professional misconduct for a lawyer to:

. . . .

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

. . . .

"(g) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law." 1991 Kan. Ct. R. Annot. 308.

Here, while the Respondent was not charged with committing a criminal act under KRPC 8.4(b), he was charged with violating KRPC 8.4(c). Accordingly, the hearing panel would have the same jurisdiction to examine the issue as was present in *Kershner*. The fact that the hearing panel ultimately did not find the Respondent had violated KRPC 8.4(c) does not affect the jurisdiction of the panel to consider the issue in the first place. As such, the hearing panel had jurisdiction to consider the complaint in this case.

The Respondent seems to focus only on the fact he was charged with violating KRPC 4.1(a), which does appear to require the lawyer to be practicing law, as it deals with making false statements *in the course of representing a client*. Regardless, evidence was presented to establish that the Respondent was practicing law. The most direct evidence of the Respondent's role as an attorney representing Lynn Steeley Estate Sales can be found in his letter to Lance Weber, an attorney representing the Johnsons, dated March 10, 2006. In that letter, the Respondent states: "This letter is sent

in my capacity as counsel for Lynn Steely, Inc., d/b/a/ Lynn Steely Estate Sales." The Respondent then proposes a settlement agreement with the Johnsons for the above-stated matter. As such, evidence established that even the Respondent, himself, viewed his role as that of an attorney for the company.

Further, evidence established the Respondent knowingly made a false statement of fact when he intentionally informed McKinney that he had forwarded the requested materials (the accounting, the key to Weiss' home, and the buyout receipts) on January 18, 2006. The Respondent attempts to argue that he was practicing law only when he issued letters written on firm letterhead and that he was not acting as an attorney in his negotiations with McKinney over the Weiss complaint. However, the evidence indicates the Respondent was serving as counsel for Lynn Steely Estate Sales in negotiating settlements between the company and Weiss and the Johnsons. Consequently, the evidence indicates the complained of actions by the Respondent did occur while engaging in the practice of law.

Additionally, violations of KRPC 3.4(f) and Supreme Court Rule 207(b) do not require the Respondent to have been practicing law. Rather, KRPC 3.4(f) prohibits a lawyer from requesting persons other than clients to refrain from voluntarily giving relevant information to another party, and Rule 207(b) requires only that a lawyer cooperate in disciplinary investigations.

Consequently, the hearing panel clearly had subject matter jurisdiction to determine whether or not the Respondent had violated the rules of professional conduct for attorneys and the Supreme Court Rules, regardless of whether the actions in question occurred while practicing law.

Further, we have previously determined that Kansas attorneys can be disciplined for conduct committed outside of Kansas. Supreme Court Rule 201 (2007 Kan. Ct. R. Annot. 257) establishes the jurisdiction of the court, and therefore, the jurisdiction of the hearing panel, and states: "Any attorney admitted to practice law in this state and any attorney specially admitted by a court of this state for a particular proceeding is subject to the jurisdiction of the

Supreme Court and the authority hereinafter established by these Rules." 2007 Kan. Ct. Rules Annot. 257.

Petitioner cites *In re Arnold*, 274 Kan. 761, 762, 56 P.3d 259 (2002), for the proposition that "[t]he jurisdiction of the Kansas Supreme Court and the Kansas Board for Discipline of Attorneys is not limited to practice in the state courts of Kansas." Although the Respondent is correct that *Arnold* is somewhat distinguishable in that it dealt with the court's jurisdiction over the actions of an attorney occurring before a federal court in Kansas, rather than before a state court, there is still nothing limiting the jurisdiction of this court over the actions of an attorney admitted to practice law in Kansas merely because those actions occur in another state. See *In re Eastepp*, 258 Kan. 766, 907 P.2d 842 (1995) (attorney suspended for 1 year from practice of law in Kansas for actions that occurred in Colorado). Accordingly, the Respondent's claim that the hearing panel and this court lack subject matter jurisdiction over the complained of actions lacks merit.

## Sufficiency of Evidence

The Respondent contends the hearing panel did not have a sufficient basis to determine that he violated KRPC 4.1 and KRPC 8.4(c). In his reply brief, the Respondent also claims there was an insufficient basis for the hearing panel to determine he had violated KRPC 3.4(f). Throughout this issue in his briefs, the Respondent sometimes refers to Rule 8.2 or 8.2(c). However, there was no allegation or finding that the Respondent violated KRPC 8.2 (2007 Kan. Ct. R. Annot. 557) (judicial and legal officials). Moreover, KRPC 8.2(c) does not exist. As such, it appears the Respondent meant to refer to KRPC 8.4(c). While the Disciplinary Administrator alleged the Respondent had violated KRPC 8.4(c), the hearing panel did not find a violation of 8.4(c). Accordingly, the only issue to be determined is whether a sufficient basis existed to support the hearing panel's finding that the Respondent violated KRPC 4.1(a) and 3.4(f). In his brief, the Respondent acknowledged there was a sufficient basis to conclude he was not cooperative with the disciplinary investigation, in violation of Supreme Court Rule 207.

Again, KRPC 4.1(a) provides that "[i]n the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person." Here, the evidence established that the Respondent was representing himself and Lynn Steely Estate Sales in negotiating with McKinney and he knowingly and intentionally informed McKinney that he had forwarded requested materials, *i.e.* the accounting, the key to Weiss' home, and the buy out receipts, on January 18, 2006. In fact, the Respondent had not mailed out the requested items and, instead, sent out a letter on January 19, 2006, offering to settle the matter for $1,375.00. This evidence is sufficient to support the hearing panel's finding that the Respondent violated KRPC 4.1(a).

With respect to KRPC 3.4(f), the evidence showed that in negotiating the settlement of the Johnsons' claim against him, the Respondent included a condition that the Johnsons refrain from voluntarily providing testimony in the disciplinary hearing. This evidence is sufficient to support the hearing panel's finding that the Respondent violated KRPC 3.4(f).

KRPC 3.4(f) states:

"A lawyer shall not:

. . . .

"(f)   request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
   (1)   the person is a relative or an employee or other agent of a client; *and*
   (2)   the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information." (Emphasis added.) 2007 Kan. Ct. R. Annot. 514.

The Respondent contends the exception to Rule 3.4(f) is applicable because any condition to refrain from voluntarily testifying was not adverse to the Johnsons' interest and that the panel erred in failing to make any finding with respect to the exception. The Respondent's argument, however, ignores the first requirement of the exception. In fact, in quoting KRPC 3.4(f) in his brief, the Respondent takes the language in subsection (1) out of the rule and replaces it with an ellipse. In order for the exception to Rule 3.4(f) to apply, both subsection (1) and subsection (2) must be met. Here, the Johnsons were not a relative or an employee or other

agent of Lynn Steely Estate Sales. As such, the exception to Rule 3.4(f) is not applicable and the hearing panel did not err in failing to make a finding as to the exception.

Conclusion

We conclude there is ample, uncontested evidence in the record to support the finding that the Respondent violated KRPC 3.4(f), KRPC 4.1(a), and Kan. Sup. Ct. R. 207(b). Although the recommendation by the majority of the panel for the Respondent to be suspended from the practice of law for 1 year is within the ABA guidelines, the recommendation of the panel is advisory only. The recommendation of the panel shall not prevent the court from imposing discipline greater or lesser than that recommended by the panel or the disciplinary administrator. Supreme Court Rule 212(f) (2007 Kan. Ct. R. Annot. 317). Considering the facts and circumstances of this case, we consider indefinite suspension to be the appropriate discipline, and we adopt the reasoning of hearing panel member John D. Gatz in his concurring opinion.

IT IS THEREFORE ORDERED that Edward F. Walsh, IV, be and is hereby indefinitely suspended from the practice of law in Kansas in accordance with Supreme Court Rule 203(a)(2) (2007 Kan. Ct. R. Annot. 261).

IT IS FURTHER ORDERED that this opinion be published in the Kansas Reports and that the costs of these proceedings be assessed to the Respondent.