No. 69,969

In the Matter of STEPHEN J. JONES, *Respondent.*

(861 P.2d 1340)

Opinion filed October 29, 1993.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint for petitioner.

*Jack Focht,* of Focht, Hughey & Calvert, of Wichita, argued the cause for respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against Stephen J. Jones, an attorney admitted to the practice of law in Kansas. Two separate complaints were filed, Case No. B5308 and Case No. B5330, which were consolidated for hearing before the Kansas Board for Discipline of Attorneys (Board) and this court. The facts, as determined by the hearing panel of the Board (the panel), and the panel's recommended discipline are not disputed by respondent.

The following pertinent findings and recommendations were made by the panel:

"4. Respondent had very little experience with plaintiff's cases in medical malpractice actions. Three of the four cases involved in Complaint No. B5308 involve medical negligence claims and all four cases involved in Complaint No. B5308 involve the plaintiff's side. Respondent found himself unable to communicate with his clients when the statute of limitations had run in the cases. He now identifies this as a psychological problem—obsessive compulsive personality disorder.

"5. Respondent and his former law firm have been sued by William D. Rupp for the matters alleged in Count I of Complaint B5308. [Respondent misrepresented the status of Rupp's medical malpractice case by making reference to the case as if it were still a viable claim. Respondent misled Rupp for a period in excess of five (5) years regarding the status of Rupp's medical malpractice case. Respondent failed to inform Rupp that his medical malpractice claim was barred by the statute of limitations until August 28, 1990.] The case is pending and discovery is ongoing . . . . The other matters alleged in Counts II [Respondent failed to file a timely claim on behalf of Iris Dunigan. Respondent misled Dunigan about the status of her case.

After realizing that Dunigan's claim was barred by the statute of limitations, Respondent failed to notify Dunigan of the status of her case for almost one year.], III [Respondent misled James Overby regarding the viability of Overby's medical malpractice claims. Respondent failed to inform Overby of the statute of limitations problems until August of 1989.], and IV [In November of 1987, Respondent agreed to represent Timothy Youngers on a personal injury claim. Respondent filed suit on September 7, 1989, one week after the statute of limitations had run. The case was dismissed on March 26, 1990, for lack of prosecution. This fact was not reported by Respondent to Youngers until September 11, 1990.] of Complaint No. B5308 have all been settled and monies have been paid. Where settlement has occurred, Respondent has paid his former law firm his proportionate share of the deductible in these cases as all the claims have been covered by Respondent and the law firm's malpractice insurance. Since leaving the law firm in 1990, Respondent has been unable to obtain legal malpractice insurance, but has made attempts to do so. There has been no claim that Respondent's actions in Complaint No. B5330 [Respondent failed to respond to requests for information and return of the case file in a workers compensation case.] resulted in monetary damages and no litigation is anticipated.

. . . .

"7. Since becoming a solo practitioner, Respondent's practice continues to consist primarily of workers compensation cases. He does some corporate work and general defense work. He has approximately 80 active files and averages 50-60 hour long work weeks. He no longer accepts any plaintiff's personal injury litigation outside the workers compensation area and has made attempts to refer domestic matters to other attorneys. His office loss prevention system consists of a triple calendar system on computer, day book and master calendar done by his secretary. In addition, he personally sets up the statute of limitations on each case and causes the same to be placed in the front of each file and on computer. He relies upon several other solo practitioners to cover for him when he is confronted with double scheduling situations.

"8. Andrew E. Busch, a practicing attorney with the law firm of Busch, Johnson, Wirth and Mank in Wichita, Kansas, has agreed to monitor Respondent's law practice and has reviewed the status of Respondent's cases with him. He has advised the panel by letter that Respondent's files are in order.

. . . .

"11. Respondent quite candidly advised the panel he views his recovery at this time as ongoing and continuing in nature. With therapy he has come to recognize his emotional problems and stop the pattern of behavior from happening, but he readily acknowledges if he 'back slides out of therapy', he is 'liable to do it again.'

"12. The panel is advised Respondent had one former discipline imposed against him *In the Matter of Stephen J. Jones*, W-3789 resulting in informal

admonition. The discipline was administered in 1987 and the rules violated were DR 6-101[A](2) and (3) [1992 Kan. Ct. R. Annot. 214] [inadequate preparation and neglect]."

The panel made conclusions and recommendations as follows:

## "CONCLUSIONS OF LAW

"Respondent's actions with respect to the handling of legal matters in Case No. B5308 do amount to a violation of DR 1-102(A)(4) [1992 Kan. Ct. R. Annot. 189] [misconduct]; DR 6-101(A)(1) and (3) [incompetence and neglect]; DR 7-101(A)(2) [1992 Kan. Ct. R. Annot. 219] [failure to provide services]; MRPC 1.1 [1992 Kan. Ct. R. Annot. 244] [incompetence]; 1.3 [1992 Kan. Ct. R. Annot. 248] [lack of diligence]; 1.4(a) and (b) [1992 Kan. Ct. R. Annot. 251] [failure to communicate]; 3.2 [1992 Kan. Ct. R. Annot. 294-95] [failure to expedite litigation]; and 8.4(c) [1992 Kan. Ct. R. Annot. 328] [misconduct]. Respondent's actions with respect to the handling of a legal matter in Case No. B5330 does amount to a violation of MRPC 1.3, 1.4(a) and (b), 1.16(a)(3) and (d) [1992 Kan. Ct. R. Annot. 286] [failure to withdraw and terminate], and 3.2.

## "RECOMMENDATION

"Respondent is guilty of serious misconduct. Suspension from the practice of law is the customary and appropriate discipline for such conduct; however, the panel is loathe to recommend such unconditional discipline in this case.

"The panel does not condone the Respondent's actions in this case. The panel recognizes that in the practice of law, the potential for serious problems exists with respect to the statute of limitations for every lawyer. Of concern to the panel was Respondent's reaction and his inability to promptly advise his clients that the statutes of limitations had run when he ran into problems in his cases during the time frame in question.

"Respondent makes no excuses for his professional misconduct and clearly has had and continues to have a hard time accepting his own shortcomings and failings. He readily acknowledges the imposition of discipline to be automatic in this case.

"The hearing panel concludes that this matter deserves special attention for the following reasons:

1. Cooperation with all participants in the disciplinary process;

2. Restitution to the aggrieved parties. (It should be noted in excess of $800,000.00 has been paid in settlement on behalf of Respondent and his former law firm on the claims set forth in Complaint No. B5308. Respondent cooperates fully with the defense in the *Rupp* litigation in which he and his former law firm are presently involved. Counsel for the defense appointed by the insurance carrier have determined triable issues exist in the litigation);

3. Confinement of misconduct to a definite time period ending in 1991 abated prior to the imposition of discipline and monitored by professional counseling of indefinite duration;

4. Acceptance of continued professional practice by clients;

5. Support of the rehabilitation effort by other members of the local bar and agreed monitoring of Respondent's actions by Andrew E. Busch;

6. Unanimous conviction of the hearing panel and the Disciplinary Administrator that rehabilitation of Respondent will serve the best interests of the profession and that Respondent is sincere in his efforts and contrite. No useful purpose will be served by depriving the Respondent of his livelihood and his clients of his services.

"The panel recommends that . . .:

"The Respondent be disciplined by suspension from the practice of law pursuant to Supreme Court Rule 203(a)(2) [1992 Kan. Ct. R. Annot. 153] for a period of eighteen (18) months, said discipline being probated on the following terms and conditions pursuant to Supreme Court Rule 203(a)(5):

1. Attorney Andrew E. Busch will supervise Respondent's legal practice for a period of eighteen (18) months from the Supreme Court Order authorizing this plan.

2. Andrew E. Busch shall be acting as an officer of the Court and as agent for the Court as supervisor of probation in monitoring the legal practice of Respondent. Mr. Busch shall be afforded all immunities granted by Supreme Court Rule 223 [1992 Kan. Ct. R. Annot. 186] during the course of his activities as directed by the Supreme Court's Order.

3. Respondent will allow Mr. Busch access to his files, his case inventory, [to the assistance of his office personnel], and his trust account. He shall periodically, but at least once per month, check the following:

    a. The status of each case on Mr. Jones' case list;

    b. The efficacy of Mr. Jones' docketing system;

    c. Management of discovery;

    d. Responses to client requests for information;

    e. Mr. Jones' trust account.

4. The supervising attorney shall by separate writing acknowledge that he has read this proposed plan and that he agrees to serve in the capacity of·supervising attorney as outlined herein and, further, that he has already reviewed the case inventory of the Respondent, familiarized himself in a general way with the client files and general type of practice of the Respondent, and states that there appears to be no apparent, significant problems with the case inventory of the Respondent.

5. The Respondent shall continue to attend the counseling sessions with Dr. Stephen K. Sowards and shall prepare and/or sign all necessary releases to direct and authorize Dr. Sowards to report periodically, but at least every two months, to the office of the Disciplinary Administrator on his progress in counseling. The report should note any significant deviation from the agreed upon appointments.

6. Respondent shall obtain, prior to the implementation of this program, an updated report from Dr. Sowards which shall include at least the following:

    a. His diagnosis of the psychological problems or condition of Respondent;

    b. Any progress made by Respondent since he began seeing Dr. Sowards;

c. His prognosis for the future so far as the same may be made as it relates to Respondent and the recommended course of treatment.

7. Dr. Stephen K. Sowards shall be acting as an officer of the Court in reporting to the Disciplinary Administrator as required in Paragraphs No. 5 and 6 herein, and shall be afforded all immunities granted by Supreme Court Rule 223 . . . during the course of his activities covered by this plan or as directed by the Supreme Court.

8. Respondent shall continue with good faith efforts to obtain legal malpractice liability insurance throughout the course of this probationary period. Respondent shall advise the office of the Disciplinary Administrator in writing of his efforts to obtain such insurance prior to the implementation of this program and shall provide the office of the Disciplinary Administrator with letter reports of his efforts at least every six (6) months during the course of his probationary period.

9. At the end of eighteen (18) months, the Disciplinary Administrator shall certify to the Supreme Court the Respondent's satisfactory completion of probation.

10. Upon report of any misconduct or non-compliance with these Orders by the Respondent, the Disciplinary Administrator shall *promptly* inform the Supreme Court and an Order shall be issued directing Respondent show cause why these Orders should not be vacated and such discipline be imposed by the Court as it deems just and proper without further formal proceedings."

Jones did not file exceptions to the findings, conclusions and recommendations as embodied in the final hearing report of the panel.

We find there is clear and convincing evidence establishing the violations found and enumerated by the panel as to each of the two counts. We agree with and adopt the panel's findings, conclusions, and recommendations, with one additional requirement:

Either Andrew E. Busch or another attorney approved by this court shall continue to supervise respondent until such time as respondent secures legal malpractice insurance coverage in an amount to be approved by this court. Respondent shall remain on probation during his supervision.

IT IS THEREFORE ORDERED that Stephen J. Jones be suspended from the practice of law for a minimum period of 18 months in accordance with Supreme Court Rule 203(a)(2) (1992 Kan. Ct. R. Annot. 153), the discipline being probated in accordance with Supreme Court Rule 203(a)(5) on the terms and conditions recommended by the panel, as modified by this court.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order shall issue to the respondent, and this court shall take whatever disciplinary actions it deems just and proper, including disbarment, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to the respondent.