No. 103,599

In the Matter of STEPHEN J. JONES, *Respondent*.

(241 P.3d 90)

*Opinion filed October 22, 2010.*

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the brief for the petitioner.

*Stephen J. Jones*, respondent, argued the cause and was on the brief pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Stephen J. Jones, of Wichita, an attorney admitted to the practice of law in Kansas in 1968.

On September 11, 2009, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC).The respondent failed to file an answer to the formal complaint. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on December 1, 2009. The respondent failed to appear at the hearing on the formal complaint. The hearing panel determined that the respondent violated KRPC 1.4(a) (2009 Kan. Ct. R. Annot. 443) (communication); 1.16(d) (2009 Kan. Ct. R. Annot. 522) (terminating representation); 5.5(a) (2009 Kan. Ct. R. Annot. 580) (unauthorized practice of law); 8.1(b) (2009 Kan. Ct. R. Annot. 594) (bar admission and disciplinary matters); 8.4(c) (2009 Kan. Ct. R. Annot. 602) (misconduct); and Supreme Court Rule 207(b) (2009 Kan. Ct. R. Annot. 303) (failure to cooperate in disciplinary investigation); Supreme Court Rule 211(b) (2009 Kan. Ct. R. Annot. 321) (failure to file answer in disciplinary proceeding); and Supreme Court Rule 218(a) (2009 Kan. Ct. R. Annot. 361) (failure to notify clients upon suspension). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

## "DA10611
### Representation of Mona Carthel

"2.   The Respondent represented Mona Carthel in a worker's compensation case. Before the Administrative Law Judge, the Respondent received a favorable judgment in behalf of Ms. Carthel. Thereafter, the employer appealed the judgment to the Worker's Compensation Board of Appeals.

"3.   While the appeal was pending, the Kansas Supreme Court decided *Casco v. Armour Swift-Eckrich*, 283 Kan. 508 (2007). In *Casco*, the Court reversed a case that established precedent for Ms. Carthel's case. Based upon *Casco*, the Worker's Compensation Board of Appeals ruled against Ms. Carthel and, as a result, severely reduced her recovery amount.

"4.   The Respondent appealed the Worker's Compensation Board of Appeals' decision to the Kansas Court of Appeals. The parties briefed the case and the Court scheduled the case for oral argument on July 30, 2008.

"5.   As a result of a disciplinary case, on June 27, 2008, the Kansas Supreme Court indefinitely suspended the Respondent from the practice of law. Additionally, the Court ordered the Respondent to comply with Kan. Sup. Ct. R. 218. *In re Jones*, 286 Kan. 544, 556 (2008).

"6.   Kan. Sup. Ct. R. 218 provides:

'In the event any attorney licensed to practice law in Kansas shall hereafter be disbarred or suspended from the practice of law pursuant to these Rules, or shall voluntarily surrender his or her license, such attorney shall forthwith notify in writing each client or person represented by him or her in pending matters, of his or her inability to undertake further representation of such client after the effective date of such order, and shall also notify in writing such client to obtain other counsel in each such matter. As to clients involved in pending litigation or administrative proceedings, such attorney shall also notify in writing the appropriate court or administrative body, along with opposing counsel, of such inability to further proceed, and shall file an appropriate motion to withdraw as counsel of record.'

"7.   Following the Respondent's suspension from the practice of law, on June 30, 2008, the Kansas Court of Appeals ordered the Respondent to inform Ms. Carthel that she must notify the Court in writing prior to July 16, 2008, whether she wished to seek substitute counsel or proceed *pro se*.

"8.   Despite the Court's order, the Respondent did not contact Ms. Carthel regarding the Court's order. The Respondent failed to withdraw from his representation of Ms. Carthel before the Kansas Court of Appeals.

"9.   On July 22, 2008, the Kansas Court of Appeals issued a second order. In that order, because the Respondent failed to respond to the June 30, 2008, order, Ms. Carthel's case was removed from the oral argument docket and was placed on the summary calendar docket.

"10.  On August 12, 2008, the Kansas Court of Appeals forwarded a copy of its June 30, 2008, and July 22, 2008, orders to the Disciplinary Administrator's office. As a result, the Disciplinary Administrator's office docketed a complaint for investigation. On October 1, 2008, the Disciplinary Administrator wrote to the Respondent, informed him that a complaint had been docketed, and directed him to provide a written response within 20 days. The Respondent never provided a written response to the complaint.

"11.  On September 12, 2008, the Kansas Court of Appeals affirmed the Worker's Compensation Board of Appeals' order, resulting in a significant reduction in Ms. Carthel's award.

"12.  Following the Kansas Court of Appeals' decision and despite his inability to do so, the Respondent agreed to file a Petition for Review before the Kansas Supreme Court in behalf of Ms. Carthel. Further, the Respondent told Ms. Carthel that it would cost approximately $200.00 to have the briefs bound.

"13.  Later, the Respondent falsely told Ms. Carthel that he filed a Petition for Review before the Kansas Supreme Court. Ms. Carthel asked the Respondent for a copy of the Petition for Review. The Respondent, however, never provided Ms. Carthel with a copy of the Petition.

"14.  The Respondent did not file, nor could he have filed a Petition for Review, as he was suspended from the practice of law.

"15.  Subsequently, Ms. Carthel called the Respondent to check on the status of the Petition for Review. The Respondent falsely advised Ms. Carthel that he had retired from the practice of law.

"16.  Ms. Carthel did not learn of the Respondent's suspension from the practice of law until Mr. Walczak from the Disciplinary Administrator's office contacted her.

"DA10616

*Representation of Ray Hizar*

"17.  Prior to his suspension from the practice of law, the Respondent represented Ray Hizar in a worker's compensation matter.

"18.  On July 29, 2008, Mr. Hizar appeared by telephone without the Respondent. At that time, Mr. Hizar requested that the matter be rescheduled so that his attorney, the Respondent, could also appear. The matter was rescheduled to September 3, 2008. The Respondent was sent a copy of the Notice of Hearing, scheduling the prehearing conference for September 3, 2008.

"19.  In anticipation of the September 3, 2008, prehearing conference, on September 2, 2008, the Respondent faxed a Prehearing Questionnaire to the Division of Workers' Compensation.

"20.  On September 3, 2008, Mr. Hizar went to the Respondent's office in order to participate in the scheduled prehearing conference call. According to Mr. Hizar, it appeared as though it was business as usual in the Respondent's office.

"21.    On September 3, 2008, Tracy T. Diel, Director of the Office of Administrative Hearings held a prehearing conference in Mr. Hizar's case. The Respondent appeared with Mr. Hizar by telephone. Mr. Diel asked the Respondent whether he had completed the Prehearing Questionnaire. The Respondent informed Mr. Diel that he had completed the Prehearing Questionnaire and had sent it *via* facsimile on September 2, 2008, to the Division of Workers' Compensation.

"22.    Mr. Diel indicated that the Prehearing Questionnaire should have been provided to the Office of Administrative Hearings rather than the Division of Workers' Compensation. The Respondent then sent the Prehearing Questionnaire by facsimile to Mr. Diel at the Office of Administrative Hearings. In the Prehearing Questionnaire, signed by the Respondent, the Respondent indicated that he was representing Mr. Hizar.

"23.    Jack Hobbs, an Assistant Attorney General, assigned to the Division of Workers' Compensation, also appeared by telephone for the prehearing conference. After Mr. Hobbs joined the conference call, the Respondent informed Mr. Diel that he had been suspended from the practice of law. He stated that he was appearing as an 'amicus' and that he was not getting paid.

"24.    Mr. Diel informed the Respondent that he did not feel comfortable with him participating in the prehearing hearing and the matter was rescheduled to allow Mr. Hizar to retain new counsel. The Respondent stated that he would not participate in the proceedings any further other than to assist Mr. Hizar in obtaining new counsel.

"25.    Prior to the conference call, the Respondent had not previously informed Mr. Hizar that his license to practice law had been suspended. The Respondent, however, previously informed Mr. Hizar that he was retiring from the practice of law.

"26.    Mr. Hizar retained Kendall Cunningham to represent him in the ongoing workers' compensation matter. Mr. Hizar located Mr. Cunningham by looking in the telephone directory. The Respondent took no steps to assist Mr. Hizar in locating new counsel.

"27.    On September 17, 2008, Mr. Diel filed a complaint with the Disciplinary Administrator's office. On October 1, 2008, the Disciplinary Administrator's office forwarded a copy of Mr. Diel's complaint to the Respondent and directed him to provide a written response to the complaint within 20 days. The Respondent never provided a written response to the complaint.

"*Service*

"28.    On September 11, 2009, the Disciplinary Administrator's office sent the Respondent a copy of the Notice of Hearing and Formal Complaint to his last registered address, 1411 N. St. Paul, Wichita, Kansas 67203, *via* certified United States mail. On September 15, 2009, the Notice of Hearing and Formal Complaint were received at the Respondent's last registered address.

"29.    The Respondent failed to file an Answer to the Formal Complaint.

## "CONCLUSIONS OF LAW

"1.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.4, KRPC 1.16, KRPC 5.5, KRPC 8.1, KRPC 8.4, Kan. Sup. Ct. R. 207, Kan. Sup. Ct. R. 211, and Kan. Sup. Ct. R. 218, as detailed below.

"2.   The Respondent failed to appear at the hearing on the Formal Complaint. It is appropriate to proceed to hearing when a Respondent fails to appear only if proper service was obtained. Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a) Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . . .

'(c) Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the Formal Complaint and the Notice of Hearing, *via* certified United States mail, postage prepaid, to the address shown on the Respondent's most recent registration. The Hearing Panel concludes that the Respondent was afforded the notice that the Kansas Supreme Court Rules require.

"3.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to properly advise Ms. Carthel of the status of her case before the Kansas Court of Appeals. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"4.   KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The Respondent violated KRPC 1.16(d) when he failed to properly inform Ms. Carthel and Mr. Hizar that he had been suspended from the practice of law. Additionally, the Respondent violated KRPC 1.16(d) when he failed to assist Ms. Carthel and Mr. Hizar in securing new counsel. The Hearing Panel concludes that the Respondent violated KRPC 1.16(d).

"5.  KRPC 5.5(a) prohibits the unauthorized practice of law. After the Kansas Supreme Court suspended the Respondent's license to practice law, the Respondent engaged in the unauthorized practice of law. The Respondent represented Mr. Hizar during the period of suspension. Because the Respondent continued to practice law when his license to do so had been suspended, the Hearing Panel concludes that the Respondent violated KRPC 5.5(a).

"6.  'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he falsely told Ms. Carthel that he had filed a Petition for Review with the Kansas Supreme Court and when he told Ms. Carthel and Mr. Hizar that he retired from the practice of law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"7.  Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(b).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The Respondent knew that he was required to forward a written response to the initial complaint—he had been instructed to do so in writing by the Disciplinary Administrator. Because the Respondent knowingly failed to provide a written response to two complaints, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"8.  The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written Answer to the Formal Complaint and by failing to file a written Answer to the Supplement to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

"9.  Attorneys are required to properly notify their clients and the court upon suspension or disbarment. Kan. Sup. Ct. R. 218(a) provides:

'In the event any attorney licensed to practice law in Kansas shall hereafter be disbarred or suspended from the practice of law pursuant to these Rules, or shall voluntarily surrender his or her license, such attorney shall forthwith notify in writing each client or person represented by him or her

in pending matters, of his or her inability to undertake further representation of such client after the effective date of such order, and shall also notify in writing such client to obtain other counsel in each such matter. As to clients involved in pending litigation or administrative proceedings, such attorney shall also notify in writing the appropriate court or administrative body, along with opposing counsel, of such inability to further proceed, and shall file an appropriate motion to withdraw as counsel of record.'

In this case, the Respondent failed to notify Ms. Carthel and Mr. Hizar that he had been suspended, as required by Kan. Sup. Ct. R. 218(a). Further, the Respondent failed to withdraw from his representation of Ms. Carthel and Mr. Hizar when the Court suspended his license to practice law. Thus, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 218(a).

"10. Kan. Sup. Ct. R. 218(c) provides that 'violation of any suspension order shall constitute grounds for disbarment.'

"AMERICAN BAR ASSOCIATION
STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide adequate communication and candor. The Respondent also violated his duty to the public to maintain his personal integrity. Finally, the Respondent violated his duty to the legal profession to comply with Court orders and rules.

"*Mental State.* The Respondent intentionally violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual serious harm to Ms. Carthel, Mr. Hizar, and the legal profession. Because the Respondent failed to inform Ms. Carthel of his suspension, Ms. Carthel's appeal to the Kansas Court of Appeals was not argued, but rather, it was placed on the summary calendar docket. Further, because Ms. Carthel believed the false statement made by the Respondent that he had filed a Petition for Review before the Kansas Supreme Court, Ms. Carthel was denied an opportunity to have the Kansas Supreme Court review her case. Mr. Hizar's workers' compensation matter was unnecessarily delayed by the Respondent's misconduct. Finally, the reputation of the legal profession, at least in the eyes of Ms. Carthel and Mr. Hizar, was diminished as a direct result of the Respondent's misconduct.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses*. The Respondent has been previously disciplined on three occasions. In 1987, the Disciplinary Administrator informally admonished the Respondent for neglecting an estate matter for a period of five years.

"On October 29, 1993, the Kansas Supreme Court placed the Respondent on probation for having neglected four cases. *In re Jones*, 253 Kan. 836 (1993).

"Finally, on June 27, 2008, the Kansas Supreme Court indefinitely suspended the Respondent from the practice of law for failing to properly distribute the net proceeds of the estate for a period of seven years despite regular reminders to do so. *In re Jones*, 286 Kan. 544, 553, 555 (2008).

"*Dishonest or Selfish Motive*. The Respondent's misconduct included dishonest conduct. Specifically, the Respondent repeatedly provided false information to his clients. Accordingly, the Hearing Panel concludes that the Respondent had a dishonest motive.

"*A Pattern of Misconduct*. The Respondent has engaged in a pattern of misconduct for years. First, in the 2007 case, the Respondent failed to provide a written response to the initial complaint or file an Answer to the Formal Complaint. The Respondent, likewise, failed to provide written responses to the initial complaints or file an Answer to the Formal Complaint in this case. Thus, the Respondent has engaged in a pattern of failing to cooperate in disciplinary investigations and proceedings for years.

"Next, the Respondent engaged in a pattern of dishonesty. The Respondent lied to Ms. Carthel when he stated that he would file a Petition for Review. The Respondent lied to Ms. Carthel when he stated that he had filed a Petition for Review. The Respondent lied to Ms. Carthel when he told her that he retired from the practice of law. Finally, the Respondent lied to Mr. Hizar when he said that he was retiring from the practice of law. Thus, the Hearing Panel concludes that the Respondent engaged in a pattern of dishonest conduct.

"Finally, the Respondent also engaged in a pattern of ignoring Court orders and rules. First, on June 27, 2008, the Kansas Supreme Court ordered the Respondent to comply with Kan. Sup. Ct. R. 218. Independent of the Kansas Supreme Court's June 27, 2008, opinion, the Respondent was required to properly notify courts, counsel, and clients of his suspension pursuant to Kan. Sup. Ct. R. 218. The Respondent disregarded both the Kansas Supreme Court's clear order as well as the clear language of Kan. Sup. Ct. R. 218. Next, on June 30, 2008, the Kansas Court of Appeals ordered the Respondent to tell Ms. Carthel that he had been suspended from the practice of law in order to allow her to have the opportunity to retain substitute counsel. The Respondent ignored the Kansas Court of Appeals' June 30, 2008, order. Thus, in addition to failing to cooperate in disciplinary investigations and proceedings, the Respondent engaged in a pattern of violating Court orders and rules.

"The Respondent's patterns of misconduct—failing to cooperate in disciplinary investigations and proceedings, engaging in dishonest conduct, and disregarding Court orders and rules—further aggravate the misconduct in this case.

"*Multiple Offenses.* The Respondent committed multiple offenses by violating KRPC 1.4, KRPC 1.16, KRPC 5.5, KRPC 8.1, KRPC 8.4, Kan. Sup. Ct. R. 207, Kan. Sup. Ct. R. 211, and Kan. Sup. Ct. R. 218.

"*Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The Respondent engaged in a bad faith obstruction of the disciplinary proceeding by intentionally failing to provide a response to the two complaints filed in this case. The Respondent, likewise, engaged in a bad faith obstruction of the disciplinary proceeding by intentionally failing to file a written Answer to the Formal Complaint.

"*Vulnerability of Victim.* Ms. Carthel and Mr. Hizar were vulnerable to the Respondent's misconduct.

"*Substantial Experience in the Practice of Law.* Prior to the Respondent's suspension, he had substantial experience in the practice of law. The Respondent's practice spanned 40 years.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found no mitigating circumstances present.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'5.11 Disbarment is generally appropriate when:

. . . .

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

'8.1 Disbarment is generally appropriate when a lawyer:

(a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be disbarred.

"The Hearing Panel is appalled at the Respondent's apparent flagrant disregard for the orders and rules of the Kansas Supreme Court and his apparent failure to recognize the import of the allegations and legal process against him. It appears to the Hearing Panel, that the Respondent has learned nothing from his repeated contacts with the disciplinary system and that he has failed to seek professional assistance to aid in changing his patterns of behavior. In its [2008] opinion, the

Kansas Supreme Court noted the Respondent's failure to learn from his mistakes in its opinion:

'Despite his prior disciplinary experience, he, again, delayed closing an estate, keeping it open even longer than the earlier case. He, obviously, found no obligation to follow our rules and file a response to the initial complaint or to file an answer to the formal complaint. Respondent, apparently, learned little from his prior disciplinary experiences.' *Jones*, 286 Kan. at 555.

"Based upon the findings of fact, the conclusions of law, and the standards, the Hearing Panel unanimously recommends that the Respondent be disbarred.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

The respondent raises exceptions before this court to the panel's factual findings and conclusions of law.

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties. From this record, we determine whether violations of KRPC exist and, if they do, what discipline should be imposed. *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003). Attorney misconduct must be established by clear and convincing evidence. *In re Patterson*, 289 Kan. 131, 133-34, 209 P.3d 692 (2009); Supreme Court Rule 211(f) (2009 Kan. Ct. R. Annot. 321). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Patterson*, 289 Kan. at 134 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Although the respondent filed exceptions to the panel's final hearing report, he does not take exception to the panel's conclusions that he violated Supreme Court Rule 207(b) (2009 Kan. Ct. R. Annot. 303) (failure to cooperate in disciplinary investigation); Supreme Court Rule 211(b) (failure to file answer in disciplinary proceeding); and Supreme Court Rule 218(a) (2009 Kan. Ct. R. Annot. 361) (failure to notify clients upon suspension). Thus, these violations are deemed admitted. Supreme Court Rule 212(c) (2009 Kan. Ct. R. Annot. 337). Also, although he implies that no discipline is warranted, nowhere in the respondent's exceptions or in

his brief before this court does he specifically take exception to the hearing panel's recommended discipline of disbarment.

The respondent takes exception with the hearing panel's determination that (1) he received notice of the hearing; (2) he violated KRPC 1.4(a) by failing to properly advise Carthel of the status of her case before the Court of Appeals; (3) he violated KRPC 1.16(d) by failing to properly inform clients Carthel and Hizar that he had been suspended from the practice of law and by failing to assist them in securing new counsel; (4) he violated KRPC 5.5(a) by continuing to represent Hizar during the period of suspension; (5) he violated KRPC 8.1(b) by failing to provide written responses to the two initial complaints; and (6) he violated KRPC 8.4(c) by falsely telling Carthel and Hizar that he retired from the practice of law and by falsely telling Carthel he had filed a petition for review in her case. In stating these arguments, respondent makes a concession that "the alleged violations are 'de minimus,' with no adverse effect on the clients and a minor at best violation of the [KRPC]."

*Notice*

In his brief, the respondent indicates that he did not receive notice of the hearing and formal complaint from the Disciplinary Administrator. The record shows that on September 11, 2009, the Disciplinary Administrator's office sent the respondent a copy of the Notice of Hearing and Formal Complaint to his last registered address via certified United States mail. On September 15, 2009, the Notice of Hearing and Formal Complaint were received at the respondent's last registered address, the mailing was signed for, and the mailing was not returned to the Disciplinary Administrator's office. Supreme Court Rule 215(a) (2009 Kan. Ct. R. Annot. 349) requires the Disciplinary Administrator to serve the formal complaint "by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address." The rule also provides that service by mail "shall be deemed complete upon mailing whether or not the same is actually received." Supreme Court Rule 215(c).

At oral argument, the respondent indicated he was no longer practicing at that address—*i.e.*, the last address he had registered with the Clerk of the Appellate Courts—and he did not know what the current occupants of his former law office might have done with the mail. Nevertheless, pursuant to Supreme Court Rule 208(c) (2009 Kan. Ct. R. Annot. 315), attorneys are required to notify the Clerk of any change of address within 30 days.

Hence, the Disciplinary Administrator provided proper notice, and any lack of actual notice is the result of the respondent's failure to comply with this court's rules. In addition, the respondent had the opportunity and did file exceptions and appear before this court. Under similar circumstances, we have concluded that an attorney was afforded notice that was reasonably calculated to apprise him of pendency of a disciplinary hearing, and, thus, was not denied his right to due process, even though the attorney did not receive notice. *In re Kershner*, 250 Kan. 383, 386-87, 827 P.2d 1189 (1992). The same conclusion applies here.

*KRPC 1.4(a)*

The respondent disputes the hearing panel's determination that he violated KRPC 1.4(a) (communication) by failing to properly advise Carthel of the status of her case before the Court of Appeals. KRPC 1.4(a) requires an attorney to keep clients reasonably informed about the status of a matter and to promptly comply with reasonable requests for information.

Following the respondent's suspension from the practice of law, the Court of Appeals—on June 30, 2008,—ordered him to inform Carthel that she must notify the Court in writing of the name of substitute counsel or her intention to proceed pro se. According to the testimony at the hearing, the respondent never withdrew from Carthel's case, and the respondent never explained to Carthel that she would need another appellate attorney to continue her legal representation. As noted in the panel's final hearing report, the Court of Appeals subsequently issued a second order, and because the respondent had failed to respond to the June 30, 2008, order, removed Carthel's case from the oral argument docket and placed it on the summary calendar docket.

In his brief before this court, the respondent does not deny that he failed to follow the orders of the Court of Appeals requiring communication with his client. Instead, he merely states that he "did not appeal but allowed the case to be submitted on briefs since he was no longer able to practice and was unable to find any other attorney to argue" the case. Clear and convincing evidence supports the hearing panel's finding that the respondent violated KRPC 1.4(a).

*KRPC 1.16(d)*

Next, the respondent takes issue with the hearing panel's determination that he violated KRPC 1.16(d) (terminating representation) when he failed to properly inform Carthel and Hizar that he had been suspended from the practice of law and failed to assist them in securing new counsel. KRPC 1.16(d) requires a suspended attorney to notify his or her client of the suspension and to take other steps to the extent reasonably practicable to protect a client's interest, such as allowing time for employment of other counsel. See *In re Docking*, 287 Kan. 485, 489, 196 P.3d 1149 (2008) (attorney's conduct in failing to notify client of attorney's 90-day suspension violated professional conduct rule requiring an attorney, upon termination of representation, to take steps to the extent reasonably practicable to protect a client's interest).

The respondent does not deny that he failed to inform his clients that he was indefinitely suspended from the practice of law. Instead, he argues that around April 2008, before his suspension, he notified both Carthel and Hizar of his plan to "retire." In the respondent's exceptions, he explains that he notified "all active clients that he intended to retire and would no longer be in practice and they could pick up their files at his office. . . . The files were available until the end of August."

With regard to assisting Carthel and Hizar in securing new counsel, the respondent deflects any responsibility by arguing that this court did not give him enough time to "wrap up any pending cases and assist the clients in final hearings already scheduled and in obtaining new counsel for their representation." It does not appear,

however, that the respondent made reasonable efforts to comply with the KRPC and the Supreme Court rules.

At the formal hearing, Carthel testified that the respondent never told her that he was suspended from the practice of law. The respondent merely mentioned that he was going to retire. Carthel's workers compensation case was scheduled for oral argument before the Court of Appeals on July 30, 2008, which was 1 month after the respondent was suspended. Despite his suspension status, he failed to withdraw as counsel and to inform Carthel of his inability to continue representing her on appeal. Neither was he retired at that time, shown by the fact that he remained the counsel of record. Then, after Carthel's case was decided on the Court of Appeals' summary calendar docket, the respondent told Carthel that he had filed a petition for review in the Kansas Supreme Court. Carthel was unaware that a petition for review was never filed or that the respondent was not authorized to file one because he was suspended from the practice of law. Clearly, the respondent's actions gave Carthel the impression that he continued to represent her legal interests in the case.

Hizar testified that he did not know the respondent was suspended from the practice of law until the September 3, 2008, prehearing conference call in his case, where the respondent informed opposing counsel and the Director of the Office of Administrative Hearings that he had been suspended. This occurred approximately 2 months after the respondent's license to practice law was suspended. Hizar indicated that the respondent had merely told him at some point that "he was retiring," but Hizar testified, "I didn't know what was going on." According to Hizar, the respondent did not offer any assistance in trying to find Hizar another attorney. After September 3, 2008, Hizar found another attorney himself by looking in the telephone book.

Clear and convincing evidence supports the hearing panel's finding that the respondent violated KRPC 1.16(d).

*KRPC 5.5(a), KRPC 8.1(b), KRPC 8.4(c)*

The respondent also disputes the hearing panel's determination that he violated KRPC 5.5(a) (unauthorized practice of law), 8.1(b)

(bar admission and disciplinary matters), and 8.4(c) (misconduct). With respect to these three rules, the respondent asserts in his brief that the hearing panel's findings collectively "benefit from the same strict interpretation by the Disciplinary Prosecutor . . . reliance on the prior cases from 1990 and 2008, to show a pattern . . . by the Disciplinary Administrator indicating almost a vendetta against the respondent." He does not cite any evidentiary support for this contention, and we find no support.

All the complaints docketed against the respondent were initiated by parties outside the office of the Disciplinary Administrator. The complaints in the present case, for example, were forwarded to the Disciplinary Administrator by the Court of Appeals and Tracy Diel, Director of the Office of Administrative Hearings. The respondent has previously been disciplined three times. In 1987, the respondent was informally admonished for neglecting an estate matter for a period of 5 years. In 1993, the respondent was placed on probation for 18 months for neglecting four cases. In 2008, the respondent was indefinitely suspended from the practice of law for failing to distribute the net proceeds of an estate for a period of 7 years. *In re Jones*, 286 Kan. 544, 186 P.3d 746 (2008); *In re Jones*, 253 Kan. 836, 861 P.2d 1340 (1993). There is no evidence of a "vendetta" against the respondent.

*KRPC 5.5(a)*

The hearing panel determined that the respondent violated KRPC 5.5(a) (unauthorized practice of law) by continuing to represent Hizar during the period of suspension. Although the respondent claims he did not violate any ethical rules, clear and convincing evidence shows that the respondent engaged in the unauthorized practice of law in representing Hizar after his license was suspended.

Hizar's testimony at the formal hearing showed that he understood the respondent was representing him in ongoing workers compensation matters through September 2008 and that the respondent conferred with him on the telephone and in the respondent's law office. Additionally, Hearing Officer Diel testified that during the prehearing telephone conference on September 3,

2008, the respondent faxed to him a prehearing questionnaire on which the respondent stated that he represented Hizar; the respondent's signature appears on the certificate of service. Later in the conversation the respondent revealed that his law license was suspended but he was assisting Hizar as an "amicus" and "was not getting paid."

At oral argument before this court, the respondent indicated his statements clearly indicate he was not representing Hizar; he asserted his only reason for being there was because he had the file. Further, he stated that he had prepared the questionnaire several months earlier. Yet, the completed questionnaire contained in the record states:

"1. Present date: September 2, 2008
"2. Name of the party represented: Ray A. Hizar
"3. Your name: Stephen Jones."

Further, the prehearing questionnaire prepared and filed by the respondent advanced, *inter alia*, legal claims, contentions, theories of defense, and motions to be filed.

A general definition of the "practice of law" has been quoted with approval as follows:

" 'As the term is generally understood, the practice of law is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court.' " *State ex rel. Boynton v. Perkins*, 138 Kan. 899, 907-08, 28 P.2d 765 (1934) (quoting *Eley v. Miller*, 7 Ind. App. 529, 34 N.E. 836 [1893] ).

In addition to that general definition, this court has established guidelines for what suspended and disbarred attorneys may and may not do. With regard to limitations, we have emphasized:

"[T]he better rule is that an attorney who has been disbarred or suspended from the practice of law is permitted to work as a law clerk, investigator, paralegal, or in any capacity as a lay person for a licensed attorney-employer if the suspended lawyer's functions are limited exclusively to work of a preparatory nature under the supervision of a licensed attorney-employer and does not involve client contact. *Any contact with a client is prohibited. Although not an inclusive list, the following restrictions apply: a suspended or disbarred lawyer may not be present*

*during conferences with clients, talk to clients either directly or on the telephone, sign correspondence to them, or contact them either directly or indirectly." In re Juhnke,* 273 Kan. 162, 166, 41 P.3d 855 (2002) (quoting *In re Wilkinson,* 251 Kan. 546, 553-54, 834 P.2d 1356 [1992] ).

The respondent did not follow these restrictive limitations. Clear and convincing evidence supports the hearing panel's finding that the respondent violated KRPC 5.5(a).

## KRPC 8.1(b)

The hearing panel determined that the respondent violated KRPC 8.1(b) (bar admission and disciplinary matters) by failing to provide written responses to the two initial complaints. It is well established that an attorney's failure to provide a written response to an initial complaint as requested by the Disciplinary Administrator violates KRPC 8.1(b) and Supreme Court Rule 207 (2009 Kan. Ct. R. Annot. 303). See *In re Gentry,* 290 Kan. 324, 327, 227 P.3d 956 (2010).

The respondent does not offer any explanation for his failure to abide by this requirement. Clear and convincing evidence supports the hearing panel's finding that the respondent violated KRPC 8.1(b).

## KRPC 8.4(c)

The hearing panel determined that the respondent violated KRPC 8.4(c) (misconduct) by falsely telling Carthel and Hizar that he retired from the practice of law and falsely telling Carthel he had filed a petition for review in her case.

The respondent dwells on the fact that in the spring of 2008, he started his plan to retire from the practice of law and that he told clients he was retiring. The problem is that after he was indefinitely suspended from the practice of law in June 2008, the respondent did not tell Carthel and Hizar about the suspension. Instead, the respondent misrepresented the truth by only mentioning his retirement. To complicate matters, the respondent continued to represent these two clients, which conveyed the impression that he was not yet retired and maintained his license to practice law.

With regard to the petition for review on Carthel's case, the respondent states in his brief and filed exceptions that after the

unfavorable decision in the Court of Appeals, he determined there was no chance of "appealing the decision" and advised Carthel that he would not recommend filing a petition for review because it would be a "useless and expensive exercise." The respondent further argues that Carthel suffered no loss by his failure to file a petition for review. Respondent ignores the obvious—by providing this advice and a legal opinion to Carthel regarding her claim, he reinforced the false impression that he was representing her.

Further, Carthel testified at the formal hearing that in September 2008, the respondent told her that he filed a petition for review. When Carthel asked the respondent for a copy of the filed petition, he did not provide it. Of course, we now know that a petition for review was never filed, nor did the respondent have the authority to file one because his law license was suspended. Regardless of whether a petition for review would have been successful, there is evidence showing that the respondent falsely indicated to Carthel that he filed such a petition in her case. Clear and convincing evidence supports the hearing panel's finding that the respondent violated KRPC 8.4(c).

*Discipline*

With respect to the discipline to be imposed, the hearing panel's recommendation that the respondent be disbarred in the state of Kansas is advisory only and shall not prevent the court from imposing discipline lesser than that recommended by the panel or the Disciplinary Administrator. Supreme Court Rule 212(f) (2009 Kan. Ct. R. Annot. 337).

Nevertheless, it is clear that the respondent does not appreciate the seriousness of his misconduct. He generally disparages the disciplinary process and the hearing panel's conclusions. Despite his prior disciplinary experience, he brushed aside his obligation to follow this court's rules, to protect the public from potential injury, or to hold the legal profession in high regard. Apparently, the respondent learned little from his prior disciplinary experiences. Therefore, we conclude that disbarment is the appropriate discipline.

IT IS THEREFORE ORDERED that Stephen J. Jones be disbarred from the practice of law in the state of Kansas, effective on filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2009 Kan. Ct. R. Annot. 272).

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Stephen J. Jones from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

PATRICIA MACKE DICK, District Judge, assigned.